# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **GREGORY BRIAN STEVENS,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action No.: 1:09cv00029 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

The plaintiff, Gregory Brian Stevens, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), and Supplemental Security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2009). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Stevens protectively filed his applications for DIB and SSI on July 21, 2005, alleging disability as of September 22, 2004,[1] based on back and shoulder problems and arthritis. (Record, ("R."), at 15, 82-84, 133, 149, 291-94.) The claims were denied initially and upon reconsideration. (R. at 34-36, 40, 46-48.) Stevens then requested a hearing before an administrative law judge, ("ALJ"). (R. at 51.) The ALJ held a hearing on February 28, 2007, at which Stevens was represented by counsel. (R. at 340-52.) A subsequent hearing was held on November 15, 2007. (R. at 297-339.)

By decision dated January 25, 2008, the ALJ denied Stevens's claims. (R. at 15-28.) The ALJ found that Stevens met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2008. (R. at 21.) The ALJ also found that Stevens had not engaged in substantial gainful activity since July 2, 2003. (R. at 21.) The ALJ found that the medical evidence established that Stevens suffered from severe impairments, namely degenerative disc disease of the lumbar spinal region and morbid obesity, but he found that Stevens did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21-24.) The ALJ also found that Stevens had the

---

[1] Stevens alleged and onset date of July 2, 2003, in his applications, but amended this onset date to September 22, 2004, at his November 15, 2007, hearing before the ALJ. (R. at 300.)

residual functional capacity to perform light work[2] that did not involve more than occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching and crawling and that did not require climbing ladders, ropes and scaffolds or work around concentrated exposure to vibrations and hazards. (R. at 24.) Therefore, the ALJ found that Stevens was unable to perform any of his past relevant work. (R. at 26.) Based on Stevens's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Stevens could perform. (R. at 26-27.) Thus, the ALJ found that Stevens was not under a disability as defined under the Act at any time through the date of his decision and was not eligible for benefits. (R. at 27-28.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2009).

After the ALJ issued his decision, Stevens pursued his administrative appeals, (R. at 10), but the Appeals Council denied his request for review. (R. at 5-7.) Stevens then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2009). This case is before the court on Stevens's motion for summary judgment filed August 19, 2009, and on the Commissioner's motion for summary judgment filed October 19, 2009.

## II. Facts

Stevens was born in 1972, which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563©, 416.963(c). (R. at 26, 82.) Stevens has a high school education and past relevant work experience as a store stocker, a poultry worker, a chicken

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2009).

cleaner or dresser and a short-order cook. (R. at 88-89, 302-05.) Stevens testified at his hearing that he was unable to work because of back, shoulder, knee and ankle pain. (R. at 308.)

Donald Woolwine, a vocational expert, was present and testified at Stevens's hearing. (R. at 327-36.) Woolwine classified Stevens's past work as a stocker and a warehouse order selector as medium,[3] unskilled work, and he classified Stevens's past work as a chicken cleaner and a short-order cook as light, unskilled work. (R. at 330.) Woolwine was asked to consider an individual of Stevens's age, education and past work experience who had the residual functional capacity to perform light work that did not involve more than occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling, that allowed for frequent balancing, that did not require climbing ladders, ropes and scaffolds or overhead reaching with the right upper extremity or work around concentrated exposure to vibration and hazards. (R. at 331-32.) Woolwine stated that there would be jobs available that such an individual could perform, including jobs as a nonclerical office helper, an unarmed security guard and a cashier. (R. at 333.) He also stated that sedentary[4] jobs existed in significant numbers that such an individual could perform, including jobs as a production inspector, a surveillance monitor and a production assembler. (R. at 333-34.)

---

[3]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567©, 416.967(c) (2009).

[4]Sedentary work involves lifting up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2009).

Woolwine also stated that all competitive work at any exertional level would be precluded if the individual had no useful ability to respond appropriately to work pressures or to changes in a routine work setting. (R. at 334.)

In rendering his decision, the ALJ reviewed medical records from Clinch Valley Medical Center; Stone Mountain Health Services; Russell County Medical Center; University of Virginia; Dr. Ronald Rossman, M.D., a state agency physician; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Michael J. Hartman, M.D., a state agency physician; E. Hugh Tenison, Ph.D., a state agency psychologist; Brian E. Warren, Ph.D., a licensed clinical psychologist; Dr. Milly Vidot, M.D.; and Dan Levesque, D.C., a chiropractor.

The record shows that Stevens underwent several diagnostic tests in 2003 at Clinch Valley Medical Center and Russell County Medical Center. (R. at 171-74, 210-11.) In May 2003, an ultrasound of Stevens's abdomen was normal. (R. at 174.) In June 2003, a liver study was normal. (R. at 172.) In July 2003, x-rays of Stevens's lumbar spine showed spondylolisthesis at the L5-S1 level with minimal L5 anterolisthesis and mild multilevel degenerative disc disease in the lower lumbar spine. (R. at 171.) In October 2003, an MRI of Stevens's lumbar spine showed spondylolisthesis at the L5-S1 level and mild left L5-S1 foraminal stenosis, Schmorl's nodules[5] and degenerative disc dessication at multiple levels without disc protrusion and para aortic lymphadenopathy. (R. at 210-11.)

On August 8, 2003, Ginger Steadman, C.F.N.P., a certified nurse practitioner

---

[5]Schmorl's nodule is defined as a nodule seen in roentgenograms of the spine due to prolapse of a nucleus pulposus into an adjoining vertebra. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 1143 (27th ed. 1988)

-5-

with Stone Mountain Health Services, saw Stevens for complaints of low back and shoulder pain. (R. at 198.) Stevens had tenderness to palpation over the lower thoracolumbar region. (R. at 198.) Straight leg raising tests were negative. (R. at 198.) In April 2004, Stevens complained of depression, relating it to his inability to work. (R. at 195.) Steadman diagnosed situational depression and anxiety. (R. at 196.) In June 2004, Stevens reported that he took only ibuprofen once daily for back pain. (R. at 187.) He reported that his symptoms of depression had improved with medication. (R. at 187.) In October 2004, Stevens reported that he had returned to work because he had been denied disability. (R. at 185.) In September 2005, Dr. Thomas Roatsey, D.O., saw Stevens. (R. at 175.) Dr. Roatsey reported that Stevens's low back pain was stable. (R. at 175.) Dr. Roatsey diagnosed stable, chronic low back pain, hyperlipidemia and depression. (R. at 175.) In June 2006, Steadman reported that Stevens was oriented, and his mood, affect, judgment and insight were normal. (R. at 258.) In July 2006, Steadman reported that Stevens's gait and station was normal. (R. at 254.) Steadman also reported that Stevens's memory, mood, affect, judgment and insight were all normal. (R. at 254.)

On July 27, 2004, Stevens was seen at the University of Virginia for complaints of low back pain. (R. at 221-22.) He denied numbness or tingling. (R. at 221.) Stevens had tenderness in his lumbar spine. (R. at 221.) He had normal motor strength. (R. at 221.) X-rays of Stevens's lumbar spine were normal. (R. at 217-18.) On August 2, 2004, a CT scan of Stevens's lumbar spine showed bilateral pars defect at the L5 level with anterolisthesis of the L5-S1 level. (R. at 213-14.)

On September 30, 2005, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Stevens had the residual functional capacity to perform light

work.  (R. at 227-31.)  No postural, manipulative, visual, communicative or environmental limitations were noted.  (R. at 229-30.)  This assessment was affirmed by Dr. Michael J. Hartman, M.D., another state agency physician, on April 5, 2006. (R. at 231.)

On September 30, 2005, E. Hugh Tenison, Ph.D., a state agency psychologist, indicated that Stevens suffered from a nonsevere affective disorder.  (R. at 233-45.) Tenison placed no restriction on Stevens's activities of daily living.  (R. at 243.) He indicated that Stevens had no difficulties in maintaining social functioning, in maintaining concentration, persistence or pace and that he had not experienced any episodes of decompensation.  (R. at 243.)

On January 12, 2007, Stevens reported to Dr. Milly Vidot, M.D., that he received good pain relief with medication.  (R. at 270-71.)  He also reported improved mood with medication.  (R. at 270.)  Dr. Vidot reported that Stevens's mood was normal, and no anxiety or sadness was noted.  (R. at 270.)  Dr. Vidot reported that Stevens's cholesterol, depression, hypothyroidism and acid reflux were all stable with medication.  (R. at 271.)

On February 20, 2007, Brian E. Warren, Ph.D., a licensed clinical psychologist, evaluated Stevens at the request of Stevens's attorney.  (R. at 246-50.)   Warren reported that Stevens's affect was normal, and his mood was depressed.  (R. at 247.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Stevens obtained a verbal IQ score of 89, a performance IQ score of 73 and a full-scale IQ score of 79.  (R. at 248.) Warren diagnosed recurrent, severe, major depressive disorder and generalized anxiety disorder.  (R. at 250.)

The following day, Warren completed a mental assessment indicating that Stevens had a satisfactory ability to understand, remember and carry out short, simple instructions, to make judgments on simple work-related decisions, to interact appropriately with the public and to interact appropriately with supervisors. (R. at 251-52.) He indicated that Stevens was seriously limited, but not precluded, in his ability to understand and remember detailed instructions, to interact appropriately with co-workers and to respond appropriately to changes in a routine work setting. (R. at 251-52.) Warren also reported that Stevens had no useful ability to carry out detailed instructions and to respond appropriately to work pressures in a usual work setting. (R. at 251-52.)

On April 9, 2007, Dan Levesque, D.C., a chiropractor, performed an independent medical evaluation on Stevens. (R. at 280-90.) Stevens complained of low back, neck, knee, ankle and shoulder pain, headaches and pain, numbness and tingling in his hands. (R. at 280.) Levesque reported that Stevens could not sit for longer than 45 minutes at a time and that he could not walk and/or stand for longer than 30-45 minutes at a time. (R. at 283.) He reported that Stevens could not lift items weighing more than 10 pounds from the ground and items weighing no more than 15 pounds from a table height. (R. at 283.) Levesque reported that Stevens could not squat, crouch, crawl, kneel or bend and that he could not climb ladders or stairs. (R. at 283.) He reported that Stevens's right shoulder pain and loss of motion would limit his ability to reach and work with his arms. (R. at 290.) He reported that Stevens's grip strength would severely limit him from performing activities such as grasping, pinching, holding or carrying items weighing more than 15 pounds. (R. at 290.) Levesque diagnosed vertebral subluxations of the L5, T12, T5 and C7 discs with associated cervicalgia, thoracalgia and lumbalgia from herniated discs and resulting

in neuritis and radiculitis, a torn rotator cuff in the right shoulder, carpal tunnel syndrome, osteoarthritis in the spine and bilateral knees and degenerative disc disease. (R. at 289.) Levesque reported that Stevens had permanent and an advancing degenerative condition to his spine. (R. at 289.) He reported that it was his opinion that Stevens was totally disabled. (R. at 290.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2009); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2009).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(a)-(B) (West

2003 & Supp. 2009); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated January 25, 2008, the ALJ denied Stevens's claims. (R. at 15-28.) The ALJ found that the medical evidence established that Stevens suffered from severe impairments, namely degenerative disc disease of the lumbar spinal region and morbid obesity, but he found that Stevens did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21-24.) The ALJ also found that Stevens had the residual functional capacity to perform light work that did not involve more than occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching and crawling and that did not require climbing ladders, ropes and scaffolds or work around concentrated exposure to vibrations and hazards. (R. at 24.) Therefore, the ALJ found that Stevens was unable to perform any of his past relevant work. (R. at 26.) Based on Stevens's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Stevens could perform. (R. at 26-27.) Thus, the ALJ found that Stevens was not under a disability as defined under the Act at any time through the date of his decision and was not eligible for benefits. (R. at 27-28.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial

evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

In his brief, Stevens argues that the ALJ failed to adequately evaluate his case. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 2-7.) In particular, Stevens argues that the ALJ erred by failing to give greater weight to the opinions of psychologist Warren and Levesque, a chiropractor. (Plaintiff's Brief at 3-5.) Stevens also argues that the ALJ erred by relying upon the vocational expert's response to a hypothetical question that did not include all of the facts. (Plaintiff's Brief at 4.) Stevens further argues that the ALJ erred by finding that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Plaintiff's Brief at 6.)

Stevens argues that the ALJ erred by failing to accord controlling weight to the

opinions of Warren and Levesque. (Plaintiff's Brief at 3-5.) The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § § 404.1527(d)(2), 416.927(d)(2) (2009). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Based on my review of the record, I find that substantial evidence supports the ALJ's weighing of the medical evidence. The ALJ considered Levesque's opinion and rejected it because it was inconsistent with the other evidence of record. (R. at 22.) Levesque reported that Stevens had four herniated discs; however, neither diagnostic studies nor any of Stevens's doctors noted a herniated disc. (R. at 171, 210-11, 213-14, 289.) Levesque reported that Stevens "cannot do any exertion whatsoever," and he recommended continued chiropractic care. (R. at 284, 290.) The record does not indicate that Stevens sought treatment for his back pain subsequent to this report. In fact, less than three months prior to Levesque's assessment, Dr. Vidot reported that Stevens's medications provided good pain relief. (R. at 270.) Stevens reported that he took only ibuprofen once daily for back pain. (R. at 187.) Stevens back pain was reported as stable and he had normal gait and station. (R. at 175, 254.)

The ALJ also noted that he considered Warren's assessment and rejected it because it was not supported by substantial evidence. (R. at 22.) Based on my review of the record, I agree. Warren evaluated Stevens one time, and Stevens admitted that he had not sought nor received subsequent mental health treatment. (R. at 321.) In fact, Stevens testified that his physical problems outweighed his mental problems. (R. at 321-22.) Stevens reported that he had no problems concentrating or following written or spoken directions. (R. at 112, 120.) Although Stevens was diagnosed with situational depression and anxiety in April 2004, he reported in June 2004 that his symptoms had improved with medication. (R. at 187, 195-96.) In June 2006 and July 2006, Stevens's mood, affect, judgment and insight were reported as normal. (R. at 254, 258.) Less than one month prior to Warren's evaluation, Dr. Vidot reported that Stevens's mood was improved with medication, and she saw no indication of anxiety or sadness. (R. at 270.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Based on this, I find that substantial evidence exists to support the ALJ's rejection of the opinions of Warren and Levesque. I also find that substantial evidence exists to support the ALJ's decision to give greater weight to the opinions of the state agency physicians and psychologists.

The ALJ found that Stevens could perform a limited range of light work. (R. at 24.) Based on my review of the record, I find that substantial evidence supports this finding. Stevens's treating physicians reported that his back pain was stable, that he had normal range of motion and that his straight leg raising tests were negative. (R. at 175-76, 179.) In January 2007, Stevens reported that his medications provided him with good pain relief. (R. at 270.) An MRI taken in October 2003 indicated some disc slippage at the L5-S1 disc and mild stenosis, but a CT scan taken on August 2, 2004,

revealed only five millimeters of slippage at the same disc and no significant stenosis. (R. at 211, 213.) X-rays of Stevens's lumbosacral spine taken on July 27, 2004, were normal. (R. at 217-18.) In addition, Stevens reported that he cared for his children, shopped for food once a week and performed household chores. (R. at 108-10, 117.) He also stated that he mowed the lawn with a push mower. (R. at 326.)

Stevens also argues that the ALJ erred by relying on the vocational expert's response to a hypothetical question that did not include all of the facts. (Plaintiff's Brief at 4.) Based on my findings on the above, I find that the hypothetical posed to the vocational expert, and relied upon by the ALJ, accurately included all of Stevens's limitations. Therefore, I reject this argument.

Stevens argues that the ALJ did not properly consider his allegations of pain. Based on my review of the ALJ's decision, however, I find that the ALJ considered Stevens's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig*, 76 F.3d at 594. Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers....

76 F.3d at 595.

I find that substantial evidence supports the ALJ's finding that Stevens's subjective complaints of disabling functional limitations were not credible. The ALJ properly considered the objective evidence of record. (R. at 24-25.) There is no evidence of strength or sensory loss, and medical records reveal adequate range of motion of the extremities and normal station and gait. (R. at 221, 254, 271.) Furthermore, the record indicates that Stevens received only conservative treatment and that his back pain was reported as stable. (R. at 175, 187.) The ALJ also considered Stevens's activities of daily living. (R. at 25.) Based on this, I find that the ALJ considered Stevens's allegations of pain in accordance with the regulations.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's weighing of the medical evidence;

2. Substantial evidence exists to support the ALJ's

> finding with regard to Stevens's residual functional capacity; and

3. Substantial evidence exists to support the ALJ's finding that Stevens was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Stevens's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the

Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 4th day of November 2009.

                                             /s/ *Pamela Meade Sargent*
                                               UNITED STATES MAGISTRATE JUDGE